**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**BRUCE JENSEN and GRETCHEN JENSEN,**

                                        **Plaintiffs,**                           **02-CV-0654(Sr)**

**v.**

**AUTOMOBILE INSURANCE COMPANY OF**
**HARTFORD, CONNECTICUT,**

                           **Defendant.**

_____

### DECISION AND ORDER

        In accordance with 28 U.S.C. § 636(c), the parties have consented to

have the undersigned conduct all further proceedings in this case, including entry of

final judgment.  Dkt. #12.


        Currently before the Court is plaintiffs' motion for summary judgment (Dkt.

#26),  declaring that defendant is obligated to defend and indemnify plaintiffs in an

action titled _Mary and Dennis Stanek, et al. v. Gretchen Jensen_, which is pending in

New York State Supreme Court, County of Erie (Index No. 11826/01), and defendant's

cross-motion for summary judgment (Dkt. #31), declaring that defendant is not

obligated to defend or indemnify plaintiffs in the underlying action.  For the following

reasons, plaintiffs' motion is denied and defendant's motion is granted.

## BACKGROUND

The Automobile Insurance Company of Hartford Connecticut ("AIC"),

insured Bruce and Gretchen Jensen pursuant to a homeowner's policy issued

September 15, 1998 and renewed to September 15, 2000.  Dkt. #33, ¶ 1.  The policy

provides defense and indemnification

> If a claim is made or a suit is brought against any insured for
> damages because of bodily injury or property damage
> caused by an occurrence to which this coverage applies,
> even if the claim or suit is false.

Dkt. #31, Pt. 32, p.17.  An insured is defined to include the policy holders and residents

of the policy holders' household who are relatives.  Dkt. #31, Pt.32, p.6.  An occurrence

is defined as "an accident" which results in "bodily injury."  Dkt. #31, Pt.32, p.6.


The policy excludes coverage for bodily injury "which is expected or

intended by any insured" or "arising out of business pursuits of any insured."  Dkt. #31-

32, p.17.  The policy includes the following language with respect to business pursuits:

> **NOTE**: The furnishing of home day care services for
>
> (1)   a fee, or
>
> (2)   other compensation
>
> by the insured and rendering of such services two or more
> days per week for a period of two or more hours per day
> constitutes one type of many different business pursuits.

> > This exclusion does not apply to:
> > (1)   activities which are ordinarily incident to non-
> >        business pursuits

* * *

Dkt. #31, Pt.32, p.17.

As a condition of coverage, the insured is subject to the following provision:

> **Duties After Loss**.  In case of an accident or occurrence, the insured shall perform the following duties that apply. You will help us in seeing that these duties are performed:
>
> a.   give written notice to us or our agent as soon as is practical, which sets forth:
>
>> (1) the identity of the policy and insured;
>>
>> (2) reasonably available information on the time, place and circumstances of the accident or occurrence; and
>>
>> (3) names and addresses of any claimants and witnesses;
>
> * * *

Dkt. #31, Pt. 32, p.20.

During the policy period, Ms. Jensen provided babysitting services for a profit at her residence.  Dkt. #35, ¶ 2.[1]   During November or December of 1999 and again during January or February of 2000, Gretchen Jensen personally witnessed inappropriate behavior of a sexual nature by her son against children in her care.  Dkt. #35, ¶¶ 2-3.  Ms. Jensen sought treatment for her son and obtained a referral to counseling services in February of 2000.  Dkt. #35, ¶ 6.

In February or March of 2000, the mother of one of the children in her care informed Ms. Jensen that "there was an incident involving" her son.  Dkt. #35, ¶ 4.

---

[1] Dkt. #35 is plaintiffs' statement of undisputed material facts.

In March of 2000, Gretchen Jensen moved daycare operations to another residence to avoid further contact between her son and the children in her care.  Dkt. #35, ¶ 5.  By that time, Ms. Jensen was aware that Erie County was investigating possible misconduct regarding daycare services provided at the Jensen's residence.  Dkt. #35, ¶ 7.

On July 17, 2000, Ms. Jensen was approached by police officers regarding allegations that her son improperly touched and/or abused children in her care.  Dkt. #35, ¶ 8.  On November 29, 2000, Ms. Jensen's son was charged with sexual abuse and directed to appear in Family Court.  Dkt. #35, ¶ 9.  Ms. Jensen was charged with endangering the welfare of a child on June 14, 2001, and pled guilty to that charge on June 18, 2001.  Dkt. #35, ¶¶ 9,12.  On June 29, 2001, Ms. Jensen's son was convicted by way of a plea to an act which, if committed by an adult, would constitute the crime of sexual abuse in the second degree.  Dkt. #35, ¶ 13.

The parents of three children receiving daycare services from Gretchen Jensen commenced suit against Ms. Jensen in New York State Supreme Court, Erie County on December 18, 2001.  Dkt. #44, Exh. A.  Each of them allege that between September of 1999 and July of 2000, Gretchen Jensen negligently supervised the children in her care by permitting opportunities for her son to be alone with the children, at which time her son had sexual and other inappropriate contact with the children, and that Ms. Jensen and/or her son subjected the children to verbal and/or physical abuse and/or threats.  Dkt. #44, Exh. A.

Ms. Jensen was served with the Summons and Complaint in the underlying personal injury action on January 8, 2002.  Dkt. #35, ¶ 15.  She telephoned her insurance agent that day and delivered a copy of the Summons and Complaint to her insurance agent on January 9, 2002.  Dkt. #35, ¶ 16.  AIC received notice of the personal injury action by letter from the insurance agent on January 18, 2002.  Dkt. #35, ¶ 16.

By letter dated January 22, 2002, AIC disclaimed coverage because

> The complaint against you alleges various acts of willful and intentional conduct involving sexual abuse and/or other inappropriate contact by [your son] with infants and verbal and/or physical abuse and/or threats by you and/or your son.

> Therefore, the plaintiffs' alleged damages do not arise out of an occurrence as required by the insuring agreement of your policy.

Dkt. #31, Pt. 31, p.3.  AIC also advised plaintiffs that "[i]n addition to the fact that any alleged bodily injury, property damage, or personal injury was not caused by an occurrence as required for coverage to attach, the above-mentioned exclusions [intentional acts and business pursuits] also apply and coverage is therefore expressly excluded as a result."  Dkt. #31, Pt. #1, p.3.

AIC also disclaimed coverage due to plaintiffs' failure to provide timely notice of the claim.  Dkt. #31, Pt.31, p.4.  Specifically, AIC advised plaintiffs that

> The Complaint states that the alleged incidents and activities occurred between September 1999 and July 2000. However, the first notice to Travelers and/or your agent was only after you were served with a Summons and Complaint on January 8, 2002.  Our investigation indicates that you

> were aware of the activities alleged for quite some time prior
> to the service of the Summons and Complaint and that as a
> result of an investigation by the District Attorney and/or other
> authorities, you pled guilty to endangering the welfare of a
> child back in June 2001 and your son's case was handled in
> Family Court back at that time also.  Therefore, you have
> failed to comply with the policy condition mentioned above
> and as a result, there is no coverage for this matter and
> [AIC] will not defend or indemnify you regarding it.

Dkt. #31, Pt.31, p.4.

Plaintiffs commenced a third-party action against AIC on August 8, 2002,
seeking declaratory judgment and alleging breach of contract and breach of the duty of
good faith and fair dealing.  Dkt. #31, Exh. 4.  The third-party action was severed from
the personal injury action by stipulation entered September 6, 2002 and removed to this
Court on September 9, 2002.  Dkt. #31, Exh. 5 & 6.  By stipulation entered January 22,
2003, the cause of action for breach of the duty of good faith and fair dealing, as well as
claims for punitive or exemplary damages, were dismissed.  Dkt. #14.

On April 24, 2003, the plaintiffs in the underlying personal injury action
commenced suit against AIC in New York State Supreme Court, County of Erie,
seeking a declaration that AIC is obligated to defend Gretchen Jensen in that action.
Dkt. #31, Exh. 11.  AIC removed the action to this Court, where it was assigned a case
number of 03CV365.  Dkt. #31, Exh. 12.  That action was consolidated with the
Jensen's action against AIC by stipulation entered August 9, 2004.  Dkt. #32.

## DISCUSSION AND ANALYSIS

### Duty to Defend

"It is well settled under New York law that an insurer's duty to defend is 'exceedingly broad.'" *First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 165 (2d Cir. 1998), *quoting Continental Cas. Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640, 648 (1993).  "An insurer must defend whenever the four corners of the complaint suggest – or the insurer has actual knowledge of facts establishing – a reasonable possibility of coverage."  *IBM Corp. v. Liberty Mut. Fire Ins. Co.*, 303 F.3d 419, 424 (2d Cir. 2002), *quoting Continental*, 80 N.Y.2d at 648.

"Determining whether an insurer has a duty to defend requires an examination of the policy language and the allegations of the complaint to see if the underlying complaint alleges any facts or grounds which bring the action within the protection purchased."  *Id., quoting First Investors*, 152 F.3d at 165-66.  "In determining whether a policy exclusion applies, the facts alleged in the complaint, rather than the conclusory assertions found therein, are controlling."  *Willard v. Preferred Mut. Ins. Co.*, 242 A.D.2d 960 (4th Dep't 1997), *lv. denied*, 91 N.Y.2d 814 (1998); *see Allstate Ins. Co. v. Mugavero*, 79 N.Y.2d 153, 162 (1992) ("the analysis depends on the facts which are pleaded, not the conclusory assertions.").

The insurer can only be excused from defending its insured "because of the language of the policy exclusion if it could establish, as a matter of law, that there is no possible factual or legal basis on which the insurer might eventually be obligated to

indemnify him under any provision contained in the policy." *Villa Charlotte Bronte, Inc. v. Commercial Union Ins. Co.*, 64 N.Y.2d 846, 848 (1985).  So long as the claims asserted against the insured may rationally be said to fall within the policy coverage, whatever may later prove to be the limits of the insurer's responsibility to pay, there is no doubt that it is obligated to defend.  *Seaboard Surety Co. v. Gillete Co.*, 64 N.Y.2d 304, 310-311 (1984).  "It is well settled that '[w]here there is ambiguity as to the existence of coverage, doubt is to be resolved in favor of the insured and against the insurer.'"  *IBM Corp.,* 303 F.3d at 424-25, *quoting Handelsman v. Sea Ins. Co. Ltd.*, 85 N.Y.2d 96, 101 (1994).

## Absence of Occurrence/Intentional Injury Exclusion

AIC argues that, regardless of the theory of liability asserted against Ms. Jensen, injury caused by the abuse of children is deemed intentional as a matter of law. Dkt. #31, Pt.34, p.11.   Accordingly, AIC asserts both that the allegations in the complaint do not constitute an occurrence and that the exclusion for expected or intended injury applies.  Dkt. #31, Pt.34, pp.11.  Ms. Jensen argues that because the claim asserted against her is framed as negligence in the supervision of the children in her care, AIC is obligated to provide a defense.  Dkt. #40.

As an initial matter, the Court notes that since the intentional act exclusion is "nothing more than a restatement of the requirement that the harm be the result of an accident for there to be coverage,"  the analysis is the same whether the argument is that coverage did not exist in the first instance or that coverage is excluded.  *Jubin v. St. Paul Fire & Marine Ins. Co.*, 236 A.D.2d 712 (3d Dep't 1997).

"In deciding whether a loss was the result of an accident, it must be determined, from the point of view of the insured, whether the loss was unexpected, unusual and unforeseen." *Allegany Co-op Ins. Co. v. Kohorst*, 254 A.D.2d 744 (4th Dep't 1998), *citing Miller v. Continental Ins. Co.*, 40 N.Y.2d 675, 677 (1976); *see Agoado Realty Corp. v. United Int'l Ins. Co.*, 95 N.Y.2d 141, 145 (2000). The emphasis in this inquiry is not necessarily upon the intent to act, but upon the intent to cause harm. This distinction is important because

> Accidental results can flow from intentional acts. The damage in question may be unintended even though the original acts leading to the damage were intentional.

*Allegany Co-Op*, 254 A.D.2d at 744; *see Continental v. Rapid-American*, 80 N.Y.2d at 649 ("Resulting damage can be unintended even though the act leading to the damage was intentional."). Thus, the "critical question is whether the harm that resulted . . . could have been other than harm 'intentionally caused' within the meaning of the policy exclusion." *Mugavero*, 79 N.Y.2d at 159.

In certain cases, the Court has determined that the theoretical possibility that the insured lacked the subjective intent to cause harm does not preclude a finding that such injuries are, as a matter of law, intentionally caused. *Progressive N. Ins. Co. v. Rafferty*, 17 A.D.3d 888 (3d Dep't 2005).

> It is now well settled that there exists a narrow class of cases in which the intentional act exclusion applies regardless of the insured's subjective intent. In such cases, the intentional act exclusion [applies] if the injury [is] inherent in the nature of the wrongful act. An injury is held to be inherent in the nature of an act when the act is so

> exceptional that cause and effect cannot be separated; that
> to do the act is necessarily to do the harm which is its
> consequence; and that since unquestionably the act is
> intended, so also is the harm.

*Id.* (internal quotations and citations omitted).  Sexual abuse of children, nonconsensual sexual contact, sexual harassment and domestic violence have all been determined to be examples of harm inherent in the nature of the insured's intentional act as a matter of law.  *Sidney Frank Importing Co. v. Farmington Cas. Co.,* 1999 WL 173263 (Mar. 26, 1999) (sexual harassment), *aff'd,* 199 F.3d 1323 (2d Cir. 1999)*; Mugavero*, 79 N.Y.2d at 160 (sexual abuse of children); *Doyle v. Allstate Ins. Co.,* 255 A.D.2d 795 (4th Dep't 1998) (domestic violence); *Pistolesi*, 223 A.D.2d 94, 97 (3d Dep't), *lv. denied*, 88 N.Y.2d 816 (1996) (nonconsensual sexual contact).


In *Mugavero*, the New York Court of Appeals also addressed claims of "negligence in caring for the children" asserted against the wife whose husband allegedly sexually abused the children she was babysitting.  79 N.Y.2d at 163-64.  The homeowner's policy in that case excluded  "all claims which arise out of the intentional acts of *any one of the insureds*." *Id.* (emphasis in original).  The Court concluded that the exclusion applied to the negligence cause of action as well, stating:

> What is excluded in this provision is a specifically defined
> class of injury – i.e., one intentionally caused *by an insured
> person*.  Inasmuch as the injuries giving rise to the claims
> here were caused by Edward Mugavero – an insured person
> – these injuries are not covered.

*Id.* (emphasis in original).

Subsequently, the New York Court of Appeals considered claims of negligent supervision, management and control of the premises against the building manager brought by a woman assaulted in an apartment building and determined that

> while the theory pleaded may be the insured's negligent failure to maintain safe premises, the operative act giving rise to any recovery is the assault. While the insured's negligence may have been a proximate cause of plaintiff's injuries, that only resolves its liability; it does not resolve the insured's right to coverage based on the language of the contract between him and the insurer. Merely because the insured might be found liable under some theory of negligence does not overcome the policy's exclusion for injury resulting from assault.

*Mount Vernon Ins. Co. v. Creative Housing Ltd.*, 88 N.Y.2d 347, 352 (1996). Thus, "it is the nature of the underlying acts, not the theory of liability, that governs." *Sweet Home Cent. Sch. Dist. v. Aetna Comm. Ins. Co.,* 263 A.D.2d 949 (4th Dep't 1999). Accordingly, the Court determined that "[b]ecause the operative acts giving rise to any recovery are intentional acts, i.e., assault and sexual abuse [by teacher against student], it is of no import that the complaint in the underlying action alleges only negligent hiring, retention and supervision on the part of [school district]." *Id.*; *see Green Chimneys Sch. for Little Folk v. National Union Fire Ins. Co. of Pittsburgh*, 244 A.D.2d 387 (2d Dep't 1997); *Public Serv. Mut. Ins. Co. v. Camp Raleigh, Inc.*, 233 A.D.2d 273 (1st Dep't 1996), *lv. denied*, 90 N.Y.2d 801 (1997); *Doe v. Allstate Ins. Co.*, 187 A.D.2d 181, 184-85 (1st Dep't), *lv. denied*, 82 N.Y.2d 652 & 657 (1993).

In the instant case, the complaint alleges that Ms. Jensen negligently supervised the children in her care by permitting opportunities for her son to be alone

with the children, at which time her son had sexual and other inappropriate contact with

the children, and that Ms. Jensen and/or her son subjected the children to verbal and/or

physical abuse and/or threats.  Dkt. #44, Exh. A.  Although the theory of liability

asserted against Ms. Jensen includes negligence, the injuries giving rise to the

negligence claim were caused by verbal, physical and/or sexual abuse committed by an

insured.  Because abuse against children is deemed intentional as a matter of law,  the

injures sustained do not meet the accidental component of the definition of occurrence

and the policy exclusion for bodily injury "which is expected or intended by any insured,"

applies.


## Business Pursuits Exclusion

AIC argues that coverage is excluded because Ms. Jensen's daycare was

a business pursuit as defined by the policy.  Dkt. #31, Pt. 34, pp. 15-17.  Plaintiffs

assert that the exception to the business pursuits exclusion for activities which are

ordinarily incident to non-business pursuits applies to the facts of this case.  Dkt. #29.


In *Outwater v. Ballister*, the New York State Appellate Division assessed a

business pursuits exclusion which provided an exception for bodily injury resulting from

activities in conjunction with business pursuits which are ordinarily considered

nonbusiness in nature, stating:

> While the language of this exception is not free of ambiguity,
> as a general rule if the injury was caused by an act that
> would not have occurred but for the business pursuits of the
> insured, said act is beyond the scope of the policy; however,
> if the injurious act would have occurred regardless of the

> insured's business activity, the exception applies and
> coverage is provided even though the act may have had a
> causal relationship to the insured's business pursuits.

253 A.D.2d 902, 905 (3d Dep't 1998).  Applying that principle to a personal injury claim

brought by a worker constructing a storage shed, the Appellate Division reversed the

trial court's award of summary judgment to the insurance company because there was

a question of fact as to whether the shed would have been constructed on the property

regardless of the insured's farming business.  *Id.*

In *Lamb v. Security Mut. Ins. Co.*, a child was bitten by a dog while in the

care of the insured.  278 A.D.2d 855, 856 (4th Dep't 2000).  The Appellate Division

determined that the business pursuit exclusion applied to relieve the insurance

company of its duty to indemnify with respect to a cause of action alleging negligent

supervision of the child, but required the insurance company to defend the insured

because the complaint also alleged strict liability for the actions of the dog and the

daycare provider's failure to supervise the dog and those allegations were not incident

to the business pursuit, *i.e.*, care of the child.

In *Gallo v. Grosvenor*, a child was sexually assaulted by his daycare

provider's son.  175 A.D.2d 454, 455 (3d Dep't 1991).  The parents of the injured child

claimed negligent supervision of the daycare provider's son by the daycare provider.  *Id.*

at 456.  The homeowner's policy included an exclusion for business pursuits, with an

exception for bodily injury resulting from business activities which were usually viewed

as nonbusiness in nature.  *Id.*  The Appellate Division agreed with the daycare provider that

> while the activity for which [the daycare provider is] sought to be held liable occurred during the time that [the daycare provider] was engaged in her business of baby-sitting, the supervision of her own child was incident to a nonbusiness pursuit. . . . Certainly, the care and supervision of [her] own child was not incident to her business pursuit, that is, the care of other children entrusted to her during their parents' absence.

*Id.*

Subsequently, the Third Department defined the standard as requiring that the injuries "could have been sustained only as a result of conduct intrinsic to the provision of child care."  *Tenkate v. Moore*, 274 A.D.2d 934, 937 (3d Dep't 2000).  In that case, the complaint alleged that the child was injured as a result of the negligent care and supervision exercised by defendants while they were providing child care, but the Appellate Division reversed the trial court's declaration that the insurance company was not required to defend and indemnify because it was possible that the injuries were inflicted by another child present in the home (as in *Gallo*), or a fall down a long flight of stairs, which the Court characterized as "a feature ordinarily associated with nonbusiness pursuits and not with the provision of child care."  *Id.*

The *Gallo* and *Tenkate* opinions both cite *Gulf Ins. Co v. Tilley*, 280 F. Supp. 60 (N.D. IN 1967), *aff'd,* 393 F.2d 119 (7th Cir. 1968).  In the *Tilley* case, a child receiving daycare at the insured's home spilled hot coffee on herself while the insured was preparing breakfast for herself and a friend.  The district court interpreted the

exception to the business pursuit exclusion

> as saying that, as a general proposition, there will be no
> liability coverage with respect to an insured's 'business
> pursuits,' but that, as an exception to this broad rule,
> coverage will be extended to liability which arises, even
> though connected in some causal manner with the insured's
> 'business pursuits,' out of an act or omission that is ordinarily
> not associated with or related to the insured's business
> pursuits.

*Id.* at 64.   Applying this principle to the facts presented, the *Tilley* court determined that

> It must be borne in mind that the particular activity which
> allegedly proximately caused [the child's] alleged injuries
> was that of preparing hot coffee.  The coffee was being
> prepared for [the insured's] personal use and for the use of
> her friend . . . .  In any event, it is manifest that the
> preparation of hot coffee is an activity that is not ordinarily
> associated with a baby-sitter's functions and, when viewed
> against the background of the excepting clause . . . clearly
> appears as an activity which was 'incident to non-business
> pursuits' . . . .

*Id.* at 65.   The Court of Appeals subsequently explained the analysis as follows:

> [I]f the injury was caused by an act that would not have
> occurred but for the business pursuits of the insured, that act
> is beyond the scope of the policy.  If, however, the injurious
> act would have occurred regardless of the insured's
> business pursuit, the exception applies and coverage is
> provided, even though the act may have had a causal
> relationship to the business pursuit.

*Thoele v. Aetna Cas. & Sur.*, 39 F.3d 724, 728 (7th Cir. 1994) (internal citations

omitted).

 

In the instant case, the underlying complaint alleges that the children were

injured by virtue of Ms. Jensen's negligent supervision of the children entrusted to her

care, which afforded her son the opportunity to be alone with the children and engage in sexual and other inappropriate conduct with the children.  Dkt. #44, Exh. A.  Because the Court is troubled by the prospect of different conclusions resulting from the same underlying facts marshaled in support of different legal theories, *i.e.*, a claim that Ms. Jensen's negligent supervision of the children in her care failed to protect them from abuse by her son would appear to warrant a different result than a claim that Ms. Jensen's negligent supervision of her son failed to protect the children in her care from abuse by her son, the Court finds those cases focusing on the relationship between the injurious conduct and the business pursuit to set forth the more appropriate analytical framework.  Since the conduct alleged to have caused injury in this case, *to wit*, sexual contact between Ms. Jensen's son and the children in her care, is not intrinsic to or commonly associated with the provision of childcare, the Court finds that the exception applies and coverage is not excluded pursuant to the business pursuits exception.

**Notice of Occurrence**

_____AIC argues that it properly disclaimed coverage on the ground that plaintiffs failed to provide timely notice of the occurrence as required by the homeowner's policy.  Dkt. #31, Pt. 34, p.6.  In response, plaintiffs argue that they had a reasonable belief of nonliability because "they had no indication that any type of civil suit would be brought against them prior to being served."  Dkt. #29.  In support of this argument, Ms. Jensen avers that neither she nor her husband contemplated the possibility of a lawsuit and that they were unaware of the need to place their insurance carrier on notice.  Dkt. #26, Pt. 3, ¶¶ 7-9; Dkt. #37, ¶¶ 10-12.  Ms. Jensen emphasizes

that this was an emotional and stressful time which required that all of her attention and

effort be directed toward protecting the safety of the children in her care and supporting

the well-being of her son.  Dkt. #26, Pt. 3, ¶ ¶ 9, 11; Dkt. #37, ¶ 9, 12.


> Notification provisions advance several important policies:
>
>> They enable insurers to make a timely investigation of
>> relevant events and exercise early control over a
>> claim.  Early control may lead to a settlement before
>> litigation and enable insurers to take steps to
>> eliminate the risk of similar occurrences in the future.
>> When insurers have timely notice of relevant
>> occurrences, they can establish more accurate
>> renewal premiums and maintain adequate reserves.

*State of N.Y. v. Blank*, 27 F.3d 783, 794 (2d Cir. 1994), *quoting Commercial Union Ins.*

*Co. v. International Flavors & Fragrances, Inc.*, 822 F.2d 267, 271 (2d Cir. 1987).  In

recognition of the importance of these policies, New York law has consistently held that

"[a]bsent a valid excuse, a failure to satisfy the notice requirement vitiates the policy,

and the insurer need not show prejudice before it can assert the defense of

noncompliance."  *Security Mut. Ins. Co. v. Acker-Fitzsimons Corp.*, 31 N.Y.2d 436, 440

(1972) (internal citations omitted); *see In re Allcity Ins. Co. and Jiminez*, 78 N.Y.2d

1054, 1055 (1991).


"There may be circumstances, such as lack of knowledge that an accident

has occurred or a reasonable belief in nonliability, that will excuse or explain delay in

giving notice, but the insured has the burden of showing the reasonableness of such

excuse."  *White v. City of New York*, 81 N.Y.2d 955, 957 (1993).  The appropriate

inquiry is "on the insured's knowledge of events and reasonable conclusions based on

that knowledge." *American Ins. Co. v. Fairchild Indus., Inc.*, 56 F.3d 435, 439 (2d Cir.

1995).  In making that assessment, "it may be relevant on the issue of reasonableness,

whether and to what extent, the insured has inquired into the circumstances of the

accident or occurrence." *Security Mut. Ins.*, 31 N.Y.2d at 441.  In other words, the

insureds must "exercise reasonable care and diligence in ascertaining the facts about

the alleged accident and in evaluating their potential liability." *Id.* at 443.


"When the facts of an occurrence are such that an insured acting in good

faith would not reasonably believe that liability will result, notice of the occurrence is

given 'as soon as possible' if given promptly after the insured receives notice that a

claim will in fact be made." *D'Aloia v. Travelers Ins. Co.,* 85 N.Y.2d 825, 826 (1995);

*see Merchants Mut. Ins. Co. v. Hoffman*, 56 N.Y.2d 799, 801 (1982).  For example,

where the insured's brother fell after stepping on a loose brick at the insured's home,

the New York Court of Appeals affirmed the Appellate Division's determination that the

insured's delay in affording notice to the insurance carrier was reasonable, stating:

> Although the accident was serious enough to occasion
> emergency room treatment, there was no evidence that the
> insureds knew or had reason to believe that permanent
> ongoing injury had occurred.  Moreover, the insured's
> postaccident inquiry into the injured's condition did not
> reveal the existence of the kind of harm that would naturally
> lead to a lawsuit.  Finally, the close familial relationship
> between the insureds and the accident victim was of such a
> nature as to support a finding that the insureds reasonably
> believed that they would have been apprised if the injured
> party had been contemplating a lawsuit.

*Argentina v. Otsego Mut. Fire Ins. Co.*, 86 N.Y.2d 748, 750-51 (1995).

In another case,  involving a dog bite on a child's arm, the New York

Court of Appeals determined that

> The record before us, which indicates that the injured party's
> parents declined the insureds' offer to pay medical expenses
> and indicated no intention to sue, supports the affirmed
> finding below that notice given by the insureds promptly after
> suit was instituted against them was given "as soon as
> possible," notwithstanding that the action was not begun
> until nearly three years after the occurrence.

*D'Aloia v. Travelers Ins. Co.*, 85 N.Y.2d at 826.

In yet a third case, the New York Court of Appeals found that

> On the record before us, which involves an injury to a child
> placed in foster care with the insureds by the Department of
> Social Services which paid all medical expenses of the child
> and indicated no intention to sue, the weight of the evidence
> supports the determination of the Appellate Division that
> notice given by the insureds promptly after suit instituted
> against them by their former foster child was given "as soon
> as practicable," notwithstanding that the action was not
> begun until after the foster child reached his majority and
> until five years after the occurrence.

*Merchants Mut. Ins. Co. v. Hoffman*, 56 N.Y.2d 799, 801-02 (1982).

In contrast, New York Courts have found that "no ordinarily prudent

person could reasonably have felt immune from potential civil liability" where the

insured's conduct toward a fellow student "was serious enough to warrant the

intervention of the police" and caused  "injuries serious enough to require

hospitalization." *Winstead v. Uniondale Union Free Sch. Dist.*, 201 A.D.2d 721, 723 (2d

Dep't 1994); *see also Allstate Ins. Co. v. Grant*, 185 A.D.2d 911 (2d Dep't 1992)

(insured's belief in nonliability unreasonable where insured "engaged in an altercation which resulted in personal injury to [victim] and criminal charges against [insured].").

In the instant case, plaintiffs had actual knowledge of the conduct giving rise to this claim in late 1999 and early 2000 by virtue of Gretchen Jensen's personal observations of inappropriate behavior of a sexual nature by her son against children in her care. Dkt. #35, ¶¶ 2-3. Ms. Jensen was aware that at least one parent had knowledge of her son's conduct as early as February or March of 2000 and found it necessary, for the protection of both the children and her son, to move her daycare to another residence in March of 2000. Dkt. #35, ¶¶ 4-5 & Dkt. #37, ¶ 5. She became aware of an investigation by Erie County in March of 2000 and a criminal investigation of her son in July of 2000. Dkt. #35, ¶ 8. Criminal charges were brought against her son for sexual abuse in November of 2000 and against her for endangering the welfare of a child in June of 2001, both of which resulted in guilty pleas in June of 2001. Dkt. #35, ¶¶ 9,12-13.

These events would have suggested the possibility of a civil lawsuit to a reasonable person. As Ms. Jensen herself acknowledges, this was an emotionally charged situation involving her own son and several young children entrusted to her care. Ms. Jensen personally observed the offensive conduct and her reaction to that conduct, as set forth in her affidavit, acknowledges the seriousness of the situation. She and her son both accepted criminal responsibility for intrinsically injurious conduct and their relationship with the victims was not such that they should have reasonably believed themselves insulated from civil liability for that conduct.

-20-

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment (Dkt. #26), declaring that AIC is obligated to defend and indemnify plaintiffs in the underlying action of *Mary and Dennis Stanek et. al. v. Gretchen Jensen*, which is pending in New York State Supreme Court, County of Erie (Index No. 11826/01), is **DENIED,** and defendant's cross-motion for summary judgment (Dkt. #31), declaring that AIC is not obligated to defend or indemnify plaintiffs in the underlying action is **GRANTED**.


**SO ORDERED.**


DATED:      Buffalo, New York
            August 8, 2005


                              S/ H. Kenneth Schroeder, Jr.
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**